Eastern District of Kentucky
FILED

FEB 08 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## LONDON

CIVIL ACTION NO. 05-58-GWU

MICHELLE KINCER,                                        PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT.

### INTRODUCTION

The plaintiff, Michelle Kincer, filed her application for Supplemental Security

Income (SSI) on December 5, 1997 (Tr. 206-9) alleging disability due to back, leg,

and shoulder difficulties. (Tr. 222). After her application was denied through the

level of the Appeals Council, the decision was remanded by Judge William O.

Bertelsman in an order dated January 9, 2003, adopting the September 4, 2002

Report and Recommendation of U.S. Magistrate Judge James B. Todd. Kincer v.

Social Security Administration, Pikeville Civil Action No. 01-80-WOB (E.D. Ky.). (Tr.

445-52). After a period of reconsideration, the case is now before the undersigned

on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1

Kincer

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

2

Kincer

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

3

Kincer

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

4

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v.

5

Kincer

Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the

6

Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

On remand, the Administrative Law Judge (ALJ) accepted additional evidence in the record concerning the plaintiff's medical treatment following her June, 1999 denial decision, and obtained the testimony of a medical expert (ME) and a vocational expert (VE). The ALJ found that the plaintiff had "severe" impairments consisting of degenerative lumbar disc disease status post an L5-S1 diskectomy, degenerative joint disease in both knees and the left shoulder, and a depressive disorder. (Tr. 378). However, she determined that the plaintiff retained the residual functional capacity to perform sedentary level exertion with a requirement of alternating sitting and standing at least once an hour, and had additional non-exertional limitations of an inability to perform work above the chest level with the left

7

arm and a limitation to performing simple, routine, repetitive tasks that did not require significant use of judgment or decision-making ability, and that did not involve contact with the general public.  (Tr. 378).  This was identical to the functional capacity found by the same ALJ in the 1999 decision.  (Tr. 22-3).

Specific concerns were raised in the Magistrate Judge's Report and Recommendation (Tr. 449-50) regarding the plaintiff's psychiatric condition and the ALJ's treatment of a 1998 functional capacity assessment by Dr. Baltazar Anaya, the plaintiff's treating psychiatrist for a period of several  months in 1998.  These concerns were addressed on remand by the testimony of an ME, Dr. Shakil Mohammed, a board-certified psychiatrist (Tr. 405, 480).  Dr. Mohammed testified that Dr. Anaya's office notes did not support his diagnosis of post traumatic stress disorder (PTSD) and did not support his "extreme" functional restrictions.  (Tr. 406, 408).  He further testified that the dosage of the medication Remeron prescribed by Dr. Anaya was very modest, and would not significantly help PTSD, although it would treat a mild type of depression and help the plaintiff sleep.  (Tr. 409-11).  The plaintiff had testified that she did not see Dr. Anaya after November, 1998, after she moved from the Cincinnati area to Hazard, Kentucky, and had only been to a mental health clinic on one occasion since that time.  (Tr. 401).  Her family physician, Dr. Varkey, was prescribing Zoloft.  (Id.).  Dr. Mohammed placed great weight on a consultative psychiatric examination by Dr. Jack Eardley in June, 2003 (Tr. 545-50), which had concluded that the plaintiff's primary issues are physical with an emotional overlay.

(Tr. 406). He also noted that the plaintiff informed Dr. Eardley that she felt that she would be able to work, were it not for her physical limitations. (Tr. 408, 550). Dr. Eardley had concluded that the plaintiff had only a depressive order by her "subjective statements" (Tr. 547), and completed a mental source statement indicating that she would have no more than a "slight" limitation in any area (Tr. 549-50). Although the plaintiff maintains on appeal that the restrictions of Dr. Anaya in 1998 should be given greater weight as a treating source, the plaintiff's lack of mental health treatment since that time, the report of Dr. Eardley, and the testimony of the ME are sufficient to provide a basis for discounting his restrictions, particularly in view of the contradictions and inconsistencies noted by the Magistrate Judge in his Report and Recommendation. (Tr. 450). Even a treating source is not entitled to total deference where his opinion is not well supported by evidence, and is contradicted by other substantial evidence of record. Warner v. Commissioner of Social Security, 375 F.3d 387, 390-1 (6th Cir. 2004). The opinion of a non-examining, reviewing source may be accepted over that of an examiner where the non-examiner has had access to all the evidence and clearly given the reasons for his difference of opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

However, other portions of the current administrative decision are not well supported by substantial evidence.

First, the ALJ accepted testimony of a VE, Dr. Kenneth Manges, as supporting a conclusion that the plaintiff could perform the job of hand packager,

Kincer

with 17 jobs in the region and 8,176 nationally, assembler with 1,107 jobs in the region and 164,718 nationally, and grader/sorter, with 75 jobs in the region and 10,565 nationally, for a total of 1,199 "regional" jobs and 183,459 national jobs. (Tr. 377). However, Dr. Manges' testimony was far from clear, and the ALJ never even posed a specific hypothetical question, although she questioned Dr. Manges regarding the testimony given by a VE in the 1999 administrative hearing. (Tr. 415). Dr. Manges stated that he disagreed with the job numbers given in the prior VE's testimony, and he felt there were fewer jobs. (Tr. 415-16). Second, he identified the regional area for which he was giving jobs as "the greater Cincinnati area, Dearborn County in southeast Indiana, Boone, Campbell, Kenton counties in Kentucky, Hamilton, Claremont . . . Warren . . . and Butler [counties] in Ohio." (Tr. 416). However, the plaintiff testified that she had moved to Hazard, Kentucky in 1998 (Tr. 401), and, when asked about jobs in that area, the VE's testimony was that "the last time I did Hazard, I couldn't come up with specific numbers of jobs in different industries . . . so the answer is, I would say it is probably a tenth of what were looking at or less." (Tr. 418-19). He thought the local area would be "the county seat and . . . several counties around it," but "I don't know what the county seat of that county is." (Tr. 419). Given these answers, the VE's testimony regarding "regional" job numbers is completely irrelevant.

The number of "national" level jobs is also dubious, as most easily detected in the following verbatim testimony.

10

VE: The listing for hand packagers and packagers [sic] currently employed are a total of 2,627, not broken down by strength demand. If I look at strength demand at the sedentary level, there's only 26, and at the light level there are 1,339. In [Exhibit] B-3A –

ALJ: Let's go back. What was that job? Hand packing?

VE: Hand packagers.

ALJ: And at the sedentary level, local numbers is what?

VE: The total number at entry-level, high school or less, 2,575. If you include SVP [specific vocational preparation] of four plus, it's a total of 2,627. B-3A/12 lists 3,694 hand packaging jobs. I don't know where that number comes from.

ALJ: And how about national numbers?

VE: Sure. Again, the same basis for the information, U.S. Bureau of Census and U.S. Bureau of Labor Statistics third-quarter 2003, hand packagers at the sedentary level, 1,176, and light level 208,408.

ALJ: And assembler?

VE: Assembler -- local economy assemblers as a third-quarter 2003, sedentary 1,107, light 5,075.

ALJ: National?

VE: There are 164,718 at the sedentary level, 754,959 at the light level.

ALJ: And grader/sorters?

VE: At the national level, graders at the sedentary level, 10,565, light 89,217.

ALJ: And the grader is different than the job of sorter?

VE: If they're grouped together.

11

Kincer

ALJ: So grader/sorter is one and the same?

VE: Yes.

ALJ: So 10,565 sedentary, 89,217 local numbers?

VE: Local at the sedentary level, 75, at the light level 631 at the entry level, GED of four or SVP of three or less.

ALJ: Any other comments you want to make about the characterization previously?

VE: No.

ALJ: Okay. Mr. Allen?

MR. ALLEN: I'm confused. Hand packer.

VE: Yes.

MR. ALLEN: The local numbers for sedentary are what?

ALJ: Two thousand, five hundred and seventy-five, is that wrong?

VE: Hand working occupations at an SVP of three or less, we have sedentary, 17 at the unskilled level. Now, there may be other occupations that may have some hand packaging in it but based upon the data that I'm sharing with you, a description of people who are doing hand working, that's what it comes down to.

MR. ALLEN: So the numbers for sedentary hand packers --

VE: Yeah.

MR. ALLEN: -- SVP of three or less is 17?

VE: Right.

MR. ALLEN: You mentioned a number that was in the 2,000s. That's for SVP of four or more?

12

Kincer

VE: Yes.

MR. ALLEN: And her profile in terms of her education and whatnot, where does she fit in as far as that goes?

VE: She has -- I'm sorry. I don't have her high school equivalency. What is it?

MR. ALLEN: Eleventh grade.

VE: Yeah, that would be an SVP of three. It's high school or less so it's at that level.

(Tr. 416-17). Therefore, it is unclear which SVP level the VE had in mind when he was discussing the national level job numbers, which, in any case, are extremely low and could only questionably be described as a "significant number."

There is a second issue regarding a functional capacity assessment issued by Dr. Denis Martonffy, a neurosurgeon who began treating the plaintiff in July, 2003. (Tr. 613). Dr. Martonffy was a partner of the plaintiff's former neurosurgeon, Dr. Joseph Williams, who apparently retired (Tr. 388) after treating the plaintiff regularly since 1999 (Tr. 345, 354, 601-11). Dr. Williams had treated the plaintiff with pain medications and injections for lower back and right leg pain following her July, 1998 back surgery for a herniated L5/S1 lumbar disc (310-11). Dr. Williams had obtained a MRI of the thoracic spine in December, 2002 showing a protrusion at T7-8, and degeneration at T6-7 and T10-11. (Tr. 623). Dr. Martonffy, who reviewed the plaintiff's prior records, diagnosed post laminectomy syndrome, thoracic spondylosis, a thoracic herniated intervertebral disc, and muscle spasm. (Tr. 613). Dr. Martonffy

13

limited the plaintiff to lifting ten pounds occasionally and five pounds frequently, standing or walking three to four hours total in an eight-hour day (less than one hour without interruption), sitting four hours (less than one without interruption), never climbing or crawling, and occasionally balancing, stooping, crouching, or kneeling, and also assessed restrictions on reaching, handling, fingering, pulling, pushing, working around heights, moving machinery, temperature extremes, fumes, humidity, and vibration. (Tr. 615-18). The reasons given were a herniated nucleus pulposus at T7-T8, positive thoracic tenderness, lumbago, thoracic degeneration, muscle spasm, and a notation that the plaintiff's pain medication "impairs judgment." (Id.).

The ALJ did not specifically reject Dr. Martonffy's restrictions, commenting that they did not appear to be "substantively different from my conclusion that the plaintiff could perform eight hours of alternate sit/stand work at the sedentary level if given the opportunity to change position at least once every hour." (Tr. 376).[1] However, this is not necessarily consistent with a maximum of four hours sitting and four hours standing/walking, since sitting in sedentary work "generally total[s] about 6 hours of an 8-hour workday" and standing "generally total[s] no more than about 2 hours of an 8-hour workday." Social Security Ruling 96-9p, p. 3. In addition, the

---

[1] The plaintiff argues on appeal that Dr. Martonffy's sitting and standing restrictions would limit her to less than full-time work, but the physician stated that she could stand or walk "3-4" hours, and sit for four hours. A reasonable fact finder could have concluded that the upper limit on standing and walking, combined with the ability to sit for four hours, would allow for full-time work. The ALJ was not obligated to accept the lower number.

14

Kincer

ALJ completely ignored the physician's uncontradicted restrictions related to the side effects of the plaintiff's medications, which included Lorcet and Zanaflex. (Tr. 614). The plaintiff had also testified that these medications made her drowsy. (Tr. 398, 404). The Commissioner's regulations state that one of the factors that must be evaluated is "the type, dosage, and side effects of any medication you take or have taken to alleviate . . . pain or other symptoms." 20 C.F.R. Section 416.929(c)(3)(iv) (2005). Clearly, this was not followed.[2]

The decision will be remanded for further consideration.

This the ___8___ day of February, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[2] The plaintiff also argues that she is at least entitled to a closed period of disability for the time "surrounding" her back surgery in 1998. This argument may also be considered on remand.

15